AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>ROBERT EDWARD SMITH,<br>a/k/a "Bobby"<br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.

5:24-mj-1062-PRL

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ February 15, 2024 _____ in the county of _____ Marion _____ in the _____ Middle _____ District of _____ Florida _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. § 5861(d) | Knowing possession of unregistered machinegun and silencer |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_Daniel McKay_
*Complainant's signature*

SA Daniel McKay, ATF
*Printed name and title*

Sworn to before me over the telephone or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date:  02/16/2024

_____
*Judge's signature*

City and state:  _____ Ocala, Florida _____

Philip R. Lammens, U.S. Magistrate Judge
*Printed name and title*

**STATE OF FLORIDA**                          **CASE NO. 5:24-mj-1062-PRL**

**COUNTY OF MARION**


## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Your affiant, Daniel McKay, being duly sworn, deposes and states:

### I. INTRODUCTION

1.       I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I have been employed by ATF since May of 2022. I am a graduate of the ATF Special Agent Basic Training Program at the Federal Law Enforcement Training Center (FLETC) in Brunswick, Georgia. I have successfully completed investigative training courses in the field of narcotics investigations/operations and firearms investigations in addition to conducting both state and federal felony-level criminal investigations. Since graduating from the ATF Academy, I have participated in and conducted multiple firearms and narcotics investigations with ATF.

2.       Prior to my employment with ATF, I was employed as a Deputy Sheriff with the Hillsborough County Sheriff's Office in Tampa, Florida for approximately six and a half years. For the Hillsborough County Sheriff's Office, I conducted investigations into state violations of criminal statutes to include firearm and narcotics violations. I also obtained certification through the Federal Bureau of Investigation's Hazardous Devices School to operate as a public safety bomb technician. As a member

of the Hillsborough County Sheriff's bomb disposal team, I conducted/participated in multiple explosive device/material investigations.

3.      As a result of my training and experience, I am familiar with the National Firearms Act (NFA), 26 U.S.C. §§ 5801–5872, which provides that certain inherently dangerous weapons, including machineguns and silencers, must be registered with ATF prior to being possessed by an individual.

4.      Under the NFA, the term "machinegun" includes fully automatic firearms and is defined as:

> [A]ny weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b).

5.      Under the NFA, the term "silencer" or "muffler" is defined as:

> [A] device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication.

18 U.S.C. § 921(a)(25); *see also* 26 U.S.C. § 5845(a)(7).

6.      I make this affidavit in support of a criminal complaint for Robert Edward SMITH, a/k/a "Bobby" (hereinafter "SMITH"). Based on the facts described

2

below, there is probable cause to believe that SMITH has violated the following statutes: 26 U.S.C. § 5861(d), relating to the possession of unregistered machineguns and silencers.

7. The information in this affidavit is based on my personal knowledge, as well as information, knowledge, observations, and investigations of other state/local law enforcement officers, and certified confidential informants.

## II. PROBABLE CAUSE

### Case Background

8. On December 11, 2023, Special Agent Jeff Davis and I opened an investigation into SMITH for violations of federal firearms laws based on information provided by a Confidential Informant (CI-1).[1] CI-1 will be referred to in the masculine gender to protect his/her identity.

9. At law enforcement's direction, CI-1 was introduced to and established a relationship with SMITH. On November 28 and December 6, 2023, CI-1 visited SMITH at his residence in Marion County ("the Residence").[2] On these days, SMITH

---

[1] CI-1 has previously cooperated with ATF investigations and has provided credible information that was later corroborated during the arrest and convictions of multiple federal defendants during his nine years as an ATF CI. CI-1 initiated contact with SMITH at the direction of ATF's Jacksonville Field Office and in exchange for financial compensation. CI-1 was convicted of a number of felonies in the 1990s, including grand theft, evading a peace officer, vehicle theft, and assault with a deadly weapon on a peace officer.

[2] As explained below, record checks confirmed SMITH is the owner and resident of the Residence. It is located within the Middle District of Florida.

3

disclosed to CI-1 that he carries a loaded pistol in a shoulder holster while at the Residence; has a safe in his bedroom with approximately thirty firearms (which he has opened to show CI-1); has loaded shotguns throughout the residence; has a Sten machinegun,[3] which he claims he built; has possession of a stolen police firearm, which he claims is now buried on his property; has "booby-traps" throughout the property; and supplies his neighbors with methamphetamine and in turn they warn him of any police presence in the area. Additionally, during CI-1's visit to SMITH's residence on December 6, 2023, there were two other men at the Residence. SMITH and the two men joked openly about a time when SMITH shot a man in the back. No information was given as to the identity of the victim. During another visit on December 8, 2024, CI-1 observed multiple firearms in the Residence.

10.     Through the Driver and Vehicle Information Database (DAVID), I obtained a driver's license photograph of SMITH and provided an unlabeled copy for CI-1 to view. CI-1 positively identified SMITH. CI-1 provided me the address where he had previously met with SMITH (the Residence). I confirmed this address matched the address listed on SMITH's Florida driver's license. The address was further confirmed via the Marion County Property Appraiser, which lists SMITH as the owner and resident of the Residence.

---

[3] Based on my training and experience, I know that Sten machineguns are British military submachine guns designed for and used in World War II.

4

<u>December 11, 2023, Controlled Purchase</u>

11.     After establishing a relationship with SMITH, CI-1 contacted SA Davis and told him that based on his conversations with SMITH, CI-1 believed he would be able to purchase a firearm from SMITH. A controlled purchase was thus arranged. I participated in the controlled purchase described below in a surveillance capacity. I have also reviewed all relevant ATF reports and watched the audio and video recording of the controlled purchase.

12.     On December 11, 2023, CI-1 met with me and SA Davis at a predetermined location in Putnam County to conduct the controlled purchase at the Residence. CI-1 did not tell SMITH that he would be coming by as CI-1 would typically visit SMITH without notice.

13.     SA Davis searched CI-1 and CI-1's vehicle and found no contraband. I provided CI-1 with $1,000 in agent cashier funds for the controlled purchase. CI-1 was equipped with audio and video surveillance equipment. ATF Resident Agent in Charge (RAC) Robert Bryson; ATF SAs Kristie Calhoun, Mallory Sonn, Barry Smalls, James Wiley, Jason Slosson; and FDLE Task Force Officer/Putnam County Detective James Nehbras provided perimeter security and surveillance for CI-1.

14.     I have reviewed the recorded audio and video obtained from the surveillance equipment. Because of the placement of the equipment, the viewing angle of the footage is limited. However, the conversation between CI-1 and SMITH can be heard clearly. The following description of CI-1's interaction with SMITH is based on

5

information provided by CI-1 and the video/audio recording, which sufficiently corroborated CI-1's information.

15.    Upon arriving at the Residence, CI-1 observed a silver truck in the driveway. CI-1 read the FL tag of the vehicle (Y80IBL) out loud to agents through the electronic surveillance equipment. According to DAVID, this vehicle is registered to SMITH.

16.    CI-1 entered the Residence and met SMITH in his bedroom. CI-1 and SMITH engaged in conversation about a .22-caliber rifle that SMITH told CI-1 he was building. CI-1 observed the rifle on SMITH's bed along with a shotgun and a pistol.

17.    CI-1 told SMITH he had a friend who could pay $2,500 for a firearm similar to the Sten machinegun SMITH had shown CI-1 during a prior visit. SMITH told CI-1 that SMITH would first need to purchase a hydraulic piston and drill three holes to make it work. SMITH said CI-1 or the friend could purchase these parts online. CI-1 reminded SMITH that CI-1 and the friend had been to prison and are prohibited from possessing firearms.

18.    CI-1 asked SMITH how much he would have to pay for one of his .357 revolvers. CI-1 added the .357 revolver was like the pistol CI-1 owned prior to going to prison. CI-1 told SMITH he would shave off the serial number so it could not be traced back to SMITH. SMITH stated he had two .357 revolvers that he had just

"cleaned."[4] CI-1 told SMITH that he had cash in hand and would purchase either a .357 revolver or a Blackhawk revolver.

19.     SMITH handed CI-1 a Blackhawk revolver, and CI-1 told him he would need to get some grips (the grips on the pistol were in poor condition). CI-1 reiterated he had been in prison. CI-1 and SMITH continued to engage in discussion about firearms as SMITH appeared to be looking for ammunition for the Blackhawk revolver, though he ultimately did not provide CI-1 with any. SMITH opened an ammunition can and exclaimed it contained "boom-boom" before quickly shutting the box.[5] CI-1 ultimately purchased the Blackhawk revolver for $640.

20.     CI-1 exited the Residence, and ATF agents followed CI-1 back to the predetermined meeting location in Putnam County. SA Davis searched CI-1 and CI-1's vehicle and found no contraband. CI-1 handed me the $360 in unused agent cashier funds and the purchased firearm: a Ruger Super Blackhawk .44 Magnum revolver bearing serial number 82-520731.

21.     CI-1 reported that he observed cameras all over the residence, which he could see were being live-streamed to computer screens in SMITH's bedroom. SMITH constantly watched the screens in CI-1's presence. CI-1 also reported he again saw the

---

[4] Based on my training and experience and the context of the conversation, SMITH was likely referring to removing the serial numbers from the firearms.

[5] The CI believes SMITH's spontaneous statement about "boom-boom" referred to some form of explosive.

safe inside SMITH's bedroom closet where he stores firearms and ammunition. CI-1 drew a quick sketch of the Residence and provided it to SA Davis.

February 7, 2024, Contact with SMITH

22.     At the direction of law enforcement, CI-1 visited SMITH again at the Residence on February 7, 2024. CI-1 was accompanied by another confidential informant (CI-2), whose purpose was to conduct a controlled purchase for methamphetamine, which did not occur. CI-2 will be referred to in the masculine gender to protect his/her identity. The contact occurred outside the direct view of ATF agents, and the following is based on electronic surveillance evidence and CI-1's statements to agents. The electronic surveillance corroborates CI-1's statements.

23.     On February 7, 2024, CI-1 met with ATF agents at a predetermined location in Putnam County to conduct a controlled purchase of a firearm from SMITH at the Residence.[6] Agents searched both CIs and their vehicle and found no contraband. I provided CI-1 with $1,000 in agent cashier funds for the controlled purchase. I equipped both CIs with audio and video surveillance equipment.

24.     Upon arriving at the Residence, the CIs met SMITH in his bedroom. After approximately six minutes of conversation, SMITH pulled up a video on his cell phone, which he claimed showed him and a friend shooting a machinegun that SMITH had built. The electronic surveillance equipment did not capture a clear image

---

[6] As note below, the controlled purchase did not take place.

8

of the cell phone video, but based on my training and experience, the sound of fully-automatic gunfire can be heard on the surveillance recording.

25.     SMITH specifically detailed how he machined an Auto Key Card to drop into a rifle he had built to be fully automatic. Based on my training and experience, I know that an Auto Key Card is a thin metal card with a template printed on it, which when cut out and properly installed on a rifle can convert the firearm into a fully automatic machinegun. Based on my knowledge of how Auto Key Cards are installed and used to convert a rifle into a machinegun, SMITH accurately described the process to CI-1.

26.     During the conversation, CI-1 asked SMITH if he would be willing to assist him with a "collection" (i.e., collecting debts from people who owe CI-1). SMITH affirmed that he would assist with the collection but warned that he is "trigger happy." SMITH also later claimed he recently pulled a gun (and cocked the hammer back) on an individual, but he did not explain why.

27.     SMITH shared he had a .22-caliber firearm that, according to SMITH, is prohibited by ATF because it is too easily converted into a fully automatic firearm. SMITH said, ".22 easy to make automatic, two clip bolt system. It will make full-auto real easy that's why ATF don't want you to have it." SMITH continued, "Ain't nothin they (ATF) need to know."

28.     CI-1 then brought up SMITH's pistol that he typically carries while at the Residence. SMITH handed the pistol to CI-1, and CI-1 physically manipulated the

9

pistol before handing it back to SMITH. CI-1 asked about the trigger pull of the pistol, which led to conversation about another gun SMITH had worked on.

29.     CI-1 asked SMITH if he had any firearms he could sell to CI-1 that day, but SMITH replied he did not.

30.     SMITH stated his closet was full of so much ammunition that the floor had started to sink in. CI-2 stated he wanted to get a pistol. SMITH pulled out an incomplete pistol, which he plans to build. Based on my review of the video recording, the pistol lacks grips and only has a frame with a slide attached. SMITH showed CI-2 how to work the pistol, and helped him manipulate the slide, safety, and trigger. SMITH then pulled out a .22-caliber revolver for CI-2 to see and hold. SMITH again pulled out the pistol he typically carries and showed him how the safeties worked on the pistol. SMITH explained to CI-2 that he always carries the pistol with a round in the chamber and a full magazine and the hammer cocked back.

31.     I reviewed the surveillance video recording, and I observed several tools and materials, including drills, screw drivers, and wrenches. Based on the facts set forth herein, there is probable cause to believe that these tools and materials are being used by SMITH to build firearms, including machineguns.

<u>Search of the Residence</u>

32.     On February 15, 2024, I applied to this Court for a search warrant to authorize a search of the Residence. This Court authorized the search and granted the requested warrant. *See* Case No. 5:24-mj-1056-PRL.

33.     The search warrant was executed on February 15, 2024. ATF SA David Simmons located a safe within the closet of SMITH's bedroom.[7] Inside the safe,[8] SA Simmons located what appeared to be a privately manufactured Sten machinegun. Based on SMITH's statements to CI-1 that he built a Sten machinegun, my examination of the firearm, and my training and experience, there is probable cause to believe it is a machinegun, as defined in 26 U.S.C. § 5845(b).



34.     SA Simmons also located two silencers on the nightstand in SMITH's bedroom. The silencers both had one end-cap threaded and a second end-cap indexed/dimpled. ATF SA Jason Slosson examined both items. Based on my

---

[7] The bedroom was consistent with the bedroom shown in the video surveillance of CI-1's interactions with SMITH. Additionally, multiple prescription bottles bearing SMITH's name were found on the dresser and nightstand, as well as in the bedroom's attached bathroom.

[8] SMITH began giving agents the code to unlock the safe, but agents determined it was unlocked.

11

conversation with SA Slosson, and on my own training and experience, and the overall structure and appearance of these items, there is probable cause to believe they are silencers, as defined in 18 U.S.C. § 921(a)(25).









35.   ATF record checks confirmed that SMITH has no firearms or silencers registered to his name in the National Firearms Registration and Transfer Record. Therefore, SMITH cannot lawfully possess them. Having confirmed this information, SMITH was arrested for the charge below.

### III. CONCLUSION

36.   Based on the foregoing facts and opinions, my experience and training, and consultation with other law enforcement agents experienced in firearms, I believe that there is probable cause to believe that SMITH has committed violations of 26 U.S.C. § 5861(d) (knowing possession of an unregistered machinegun and silencers).

Respectfully submitted,

*Daniel McKay*

Daniel McKay, Special Agent
Bureau of Alcohol, Tobacco, Firearms
& Explosives (ATF)

*Affidavit submitted to me by reliable electronic means and attested to me as true and accurate by telephone or other reliable electronic means consistent with Fed. R. Crim. P. 3 and 4.1 before me this* __16th__ *day of February 2024.*

PHILIP R. LAMMENS
United States Magistrate Judge

13